_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

JAN 1 7 2002

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY_____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MILICENT J. DANIELS-CHAMBLE        :

                                              :

v.                                 :       Civil Action WMN-00-3405

                                              :

BALTIMORE LIFE COMPANIES,
    et al.                         :

**MEMORANDUM**

    Before the Court is Defendants' Motion to Dismiss. Paper No. 8. The motion is fully briefed. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the Court will grant Defendants' motion.[1]

    Plaintiff, an African American female, was employed as an Assistant Vice President by Defendant Baltimore Life Companies (Baltimore Life). Defendant Mark Ewing was the Senior Vice President of Administration for Baltimore Life and, according to Plaintiff, was the individual chiefly responsible for the employment actions of which she now complains. Specifically,

---

[1] It will also be necessary for the Court to reopen this action. On March 9, 2001, the Court issued an order requiring Plaintiff to show cause within 14 days why this action should not be dismissed for Plaintiff's failure to effect service of process. On March 26, 2001, it appearing that Plaintiff filed no response, the Court issued an order dismissing the case, without prejudice. On that same date, however, Plaintiff filed a return of service as to Defendant Mark Ewing. On April 3, 2001, Plaintiff filed a return of service as to Baltimore Life. Both returns of service indicated that the service was effected on March 15, 2001. While Plaintiff has not filed a motion to reopen, Defendants have responded to the Complaint without raising any issues as to service. Accordingly, the Court will reopen the case, sua sponte.

Plaintiff alleges that in August of 1999, she was denied a promotion to the position of Chief Underwriter. As a result of her learning that she would not be given the position, Plaintiff sent a letter of resignation on October 11, 1999, which Baltimore Life accepted on October 22, 1999.

In her complaint, Plaintiff, proceeding pro se, alleges that Defendants' failure to promote her was based on her race and sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 <u>et seq.</u>  It also appears that she is bringing a discriminatory discharge claim as she asserts in her complaint that she was "terminated from her employment" on October 22, 1999. Complaint at 2.

Plaintiff also appears to be bringing a claim of retaliation and perhaps, a state law libel claim. Between the time that Plaintiff tendered her resignation and the time it was accepted by Baltimore Life, Brian Stricker, Baltimore Life's Vice President of Insurance Services, sent an e-mail message to others in Plaintiff's department stating that Plaintiff "would be out sick for an undetermined period." E-Mail dated October 12, 1999, attachment to Complaint. In her Complaint, Plaintiff refers to this e-mail message as "[r]etaliation in the form of libel per se." Complaint at 2.

In their motion to dismiss, Defendants argue that all claims against Defendant Ewing must be dismissed, as Title VII imposes

2

liability only on employers, not on individual supervisors. Defendants also argue that the discriminatory discharge, retaliation, and libel claims must be dismissed as against Defendant Baltimore Life. Defendant Baltimore Life is not moving at this time for dismissal of Plaintiff's discriminatory failure to promote claim.

As to the claims against Defendant Ewing, it is now well established that individuals, even supervisors, are not "employers" within the meaning of Title VII and thus, cannot be held liable under that statute. See Lissau v. Southern Food Service, Inc., 159 F.3d 177. 181 (4th Cir. 1998). The Court notes that Plaintiff does not allege that Ewing was responsible for the allegedly libelous e-mail. Thus, all claims against Defendant Ewing will be dismissed.

As to Plaintiff's discriminatory discharge claim, it is clear from the documents attached to the complaint that Plaintiff resigned from her position. See October 11, 1999 Letter from Plaintiff to John Pearson, attached to Complaint. Therefore, to bring a claim of discriminatory discharge, Plaintiff must show that she was forced to resign, i.e., that she was "constructively discharged" from her employment. The Fourth Circuit has explained the nature of a constructive discharge claim as follows:

> A constructive discharge occurs when an employer deliberately makes an employee's working conditions

3

> intolerable and thereby forces him to quit his job
> . . . A plaintiff alleging constructive discharge
> must therefore prove two elements: deliberateness of
> the employer's action and intolerability of working
> conditions.

Bristow v. Daily Press, Inc., 770 F.2d 1251, 1255 (4th Cir. 1985) (citations omitted), cert. denied, 475 U.S. 1082 (1986).

A plaintiff shows deliberateness "only if the actions complained of were intended by the employer as an effort to force the employee to quit." Id., 770 F.2d at 1255. The second element, intolerability of working conditions, "is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign." Id.

The Fourth Circuit has cautioned, however, that constructive discharge claims must be "carefully cabined" because they are "open to abuse by those who leave employment of their own accord." Id. This Court has explained the reason for that caution:

> An employee may assert a constructive
> discharge claim only by demonstrating that
> the employer deliberately made the work
> conditions so intolerable that no reasonable
> person would have remained on the job. This
> rule serves the strong legislative policy in
> favor of the employee's remaining on the job
> while [his] claim is being investigated by
> the EEOC or litigated in the courts. As one
> court has stated, the standard remedy under
> Title VII is "to stay and fight."

Diamond v. T. Rowe Price Assoc., Inc., 852 F.Supp. 372, 397 (D. Md. 1994).

4

Here, accepting the allegations contained in the Complaint as true and liberally construing the Complaint as a whole, as the Court must at this stage in the proceedings, <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969), the Court, nonetheless, finds that Plaintiff is unable to maintain a constructive discharge claim.  The documents Plaintiff attached to the Complaint belie any implication that Baltimore Life either intended to force Plaintiff to quit or made the conditions of her employment so intolerable that she was compelled to resign.

Shortly after Plaintiff was told that she would not receive the promotion, Brian Stricker sent her an e-mail in which he stated,

> Milicent, our conversation was brief, and I wanted you to be clear . . .
>
> I very much want you to stay.
>
> I'm increasing your salary, effective the beginning of the next payroll period, by $7,000 annually.
>
> We will pay you a $10,000 bonus, net of taxes, etc., on 9/30/99.  This is both to thank you . . . as well as to put some money behind my pledge that we want you to stay.
>
> . . .
>
> Milicent, as you talk with your friends and associates at BLI and figure out where you go from here, it will be evident to you that the sales and marketing folks, as well as the rest of the executive group very much support you, and want you to be a bright part

5

of our future.

August 25, 1999 e-mail from Stricker to Plaintiff, attached to Complaint.  In this same e-mail, Stricker also informed Plaintiff that he would like Plaintiff to continue working with the "Executive Coach" that Baltimore Life had hired to work with her. Id.

Shortly before Plaintiff offered her resignation on October 11, 1999, and while Plaintiff was out sick, Ewing sent a letter to Plaintiff informing her that there would be another bonus check waiting for her when she returned to work.  After Plaintiff resigned, Ewing sent her another letter stating, "[w]e are all upset and dismayed by your resignation and comments.  We would like to have the opportunity to meet with you for the purpose of convincing you to return to work and resume your responsibilities."  October 12, 1999 Letter from Ewing to Plaintiff, attached to Complaint.  He also forwarded the second bonus check at this time.  It was only after Plaintiff did not respond to his request for an opportunity to "clarify whatever misunderstandings exist," id., and after waiting 11 days that Ewing accepted her resignation.

While it was obviously disappointing to Plaintiff to be passed over for this position for which she believes she was best qualified, one does not get the sense that anyone was trying to

force Plaintiff to resign.  There are simply no allegations in the Complaint that would support a finding of constructive discharge.  In fact, all of the documents that Plaintiff included with her Complaint point to the unavoidable conclusion that Defendants were vigorously trying to persuade her to stay.

   The nature of Plaintiff's retaliation claim is somewhat unclear.  To make out the prima facie case of retaliation, a plaintiff must demonstrate that: 1) she engaged in protected activity; 2) she suffered an adverse employment action; and 3) a causal connection exists between the two.  Beall v. Abbott Laboratories, 130 F.3d 614, 619 (4th Cir. 1997).  It is not clear what "protected activity" Plaintiff alleges she participated in.  Furthermore, sending an e-mail to an employee's co-worker stating that the employee was "out sick" does not constitute an adverse employment action, even if it was somehow meant to harass or embarrass Plaintiff.  Under the prevailing case law in the Fourth Circuit, "[a]dverse employment action includes any retaliatory act or harassment if, but only if, that act or harassment results in an adverse effect on the 'terms, conditions, or benefits' of employment."  Von Gunten v. State of Maryland, 243 F.3d 858, 866 (4th Cir. 2001), citing Munday v. Waste Mgmt. of North America, Inc., 126 F.3d 239, 243 (4th Cir. 1997).  Here, there is no such adverse effect alleged.

Finally, the Court finds that Plaintiff's libel claim, to the extent that she is attempting to state such a claim, must also be dismissed. The statute of limitations for a libel action in Maryland is one year. Md. Code. Ann., Cts. & Jud. Pro. § 5-105. The alleged libelous statement, Stricker's e-mail, was sent on October 12, 1999. This suit was not filed until November 15, 2000.

For all the above-stated reasons, Defendants' Motion to Dismiss will be granted. A separate order consistent with this memorandum will issue.

　　　　　　　　　　　　　　　　　　／s／ William M. Nickerson
　　　　　　　　　　　　　　　　　　William M. Nickerson
　　　　　　　　　　　　　　　　　　United States District Judge

Dated: January 16, 2002